### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16cv22471
### (CASE NO.: 08-20464-CR-HUCK)

PAUL VERNON
          Movant,

v.


UNITED STATES OF AMERICA,
          Respondent.
_____/

### MOTION TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND MEMORANDUM OF LAW IN SUPPORT AND REQUEST FOR IMMEDIATE RELEASE

      Paul Vernon, through undersigned counsel, respectfully moves this Court to correct his sentence, pursuant to 28 U.S.C. § 2255, and states:

1.     On August 5, 2008, after a jury trial, Paul Vernon was found guilty of Counts 1,2,3,4 and 6 of the 6 count indictment.  (D.E. 52) Count 1 charged him with armed bank robbery on April 11, 2008, in violation of 18 U.S.C. § 2113(a)(d). **Count 2 charged him with the use and carrying of a firearm in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence on April 11, 2008, in violation of 18 U.S.C. § 924(c)(1)(A).**  Count three charged him with bank robbery on April 21, 2008, in violation of 18 U.S.C. § 2113(a). He was convicted of a lesser included offense of bank robbery without a dangerous weapon on April 28, 2008, in Count 4 in violation of 18 U.S.C. § 2113(a).   Vernon was found not

1

guilty as to Count 5 that charged him with use a carrying of a firearm in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence, a bank robbery on April 28, 2008, in violation of 18 U.S.C. § 924(c)(1)(A).  Count 6 charged him with being a felon in possession of a firearm and ammunition on May 14, 2008, in violation 18 U.S.C. § 922(g)(1).

2.  On October 24, 2008, Paul Vernon was sentenced to a term of 180 months imprisonment. (D.E. 67) The term consist of ninety-six (96) months as to each of Counts 1, 3, 4 and 6 to be served concurrently with each other and eighty-four (84) months as to Count 2, to be served consecutively to the terms imposed in counts 1, 3, 4, and 6.  (D.E. 68).

3.  Paul Vernon now requests relief in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (June 26, 2015), which held that the ACCA's "residual clause" in § 924(e)(2)(B)(ii) is unconstitutionally vague.

4.  Application of *Johnson* to this case demonstrates that Paul Vernon is actually innocent of Count 2 the § 924(c) count, because Bank Robbery no longer qualifies as a predicate "crime of violence."

5.  Accordingly, Paul Vernon is entitled to relief under § 2255.

6.  Because Paul Vernon has served in excess of what the statutory maximum would be without the § 924(c) counts and is currently serving an illegal sentence, he respectfully requests that the Court expedite this matter, order his immediate release, or at minimum, an immediate, unsecured bond.

## PROCEDURAL HISTORY

On May 29, 2008, Paul Conrad Vernon was indicted in a six count indictment that charged him with two separate bank robberies.  (D.E. 9) On August 5, 2008, after a jury trial, Paul Vernon was found guilty of Counts 1,2,3,4 and 6 of the 6 count indictment. (D.E. 52) Count 1 charged him with armed bank robbery on April 11, 2008, in violation of 18 U.S.C. § 2113(a)(d).  Count 2 charged him with the use and carrying of a firearm in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence on April 11, 2008, in violation of 18 U.S.C. § 924(c)(1)(A).  Count three charged him with bank robbery on April 21, 2008, in violation of 18 U.S.C. § 2113(a). He was convicted of a lesser included offense of bank robbery without a dangerous weapon on April 28, 2008, in Count 4 in violation of 18 U.S.C. § 2113(a).   Vernon was found not guilty as to Count 5 that charged him with use a carrying of a firearm in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence, a bank robbery on April 28, 2008, in violation of 18 U.S.C. § 924(c)(1)(A).  Count 6 charged him with being a felon in possession of a firearm and ammunition on May 14, 2008, in violation 18 U.S.C. § 922(g)(1).

On October 24, 2008, Paul Vernon was sentenced to a term of 180 months imprisonment.  (D.E. 67) The term consist of ninety-six (96) months as to each of Counts 1, 3, 4 and 6 to be served concurrently with each other and eighty-four (84) months as to Count 2, to be served consecutively to the terms imposed in counts 1, 3, 4, and 6.  (D.E. 68).

No appeal was filed in the case.  On August 3, 2009, Mr. Vernon filed a Motion to Vacate under 28 U.S.C. § 2255. (D.E. 73).  However, on March 3, 2010, based on Mr. Vernon's motion for voluntary dismissal, this motion to vacate was dismissed without prejudice. (D.E. 14).  Therefore, Paul Vernon is still permitted to file an initial motion under 28 U.S.C. § 2255.

## **GROUNDS FOR RELIEF**

Paul Vernon is actually innocent of his § 924(c) conviction and sentence. As an initial matter: Paul Vernon's claim is cognizable on collateral review; *Johnson* applies retroactively to this case; and Paul Vernon's claim is timely.

## I.    **Paul Vernon's Claim is Cognizable Under § 2255**

Title 28 U.S.C. § 2255(a) authorizes a federal prisoner claiming "that [his] sentence was imposed in violation of the Constitution . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Paul Vernon claims that his § 924(c) conviction and resultant consecutive sentence violate due process. This constitutional claim is cognizable in a § 2255 motion under § 2255(a).

In addition, the Supreme Court has squarely held that, where a defendant is convicted and punished for an offense that the law does not make criminal, he has a claim that is cognizable under 28 U.S.C. § 2255. *Davis v. United States*, 417 U.S. 333, 346-47 (1974) ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under s 2255. Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a s 2255 proceeding.") (quotation marks omitted).

## II.      Paul Vernon's Motion is Timely

As relevant here, § 2255 imposes a one-year statute of limitations that runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).  That date runs from the date the Supreme Court recognizes the new right.  *Dodd v. United States*, 545 U.S. 343, 360 (2005).

Paul Vernon's motion is timely under § 2255(f)(3). In declaring the ACCA's residual clause unconstitutionally vague, *Johnson* recognized a new right because that result was not "dictated by precedent" at the time Paul Vernon's conviction became final. *See Howard v. United States*, 374 F.3d 1068, 1073–74 (11th Cir. 2004). To the contrary, the Supreme Court itself, as well as the Eleventh Circuit, had repeatedly rejected vagueness challenges to the residual clause. *Sykes v. United States*, 564 U.S. 1 (2011); *James v. United States*, 550 U.S. 192, 210 n. 6 (2007); *United States v. Gandy*, 710 F.3d 1234, 1239 (11th Cir. 2013). And, as explained above, *Johnson* applies retroactively because it is a substantive rule.

Therefore, Paul Vernon has one year from the date *Johnson* was decided—June 26, 2016—to seek relief. *See Dodd v. United States*, 545 U.S. 343, 360 (2005). Thus, this motion is timely under § 2255(f)(3).

## III.     *Johnson* Applies Retroactively to this Case

In *Welch v. United States*, the Supreme Court squarely held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral

review." 578 U.S. at __, 136 S. Ct. 1257, 1268 (2016); *see id.* at 1265 ("the rule announced in *Johnson* is substantive"); *Mays v. United States*, 817 F.3d 728, 736 (11th Cir. 2016) (concluding even before *Welch* that "*Johnson* is retroactive because it qualifies as a substantive rule . . . since it narrows the class of people that may be eligible for a heightened sentence under the ACCA."). And the Supreme Court has held that decisions narrowing the reach of § 924(c) are substantive rules that apply retroactively. *Bousley v. United States*, 523 U.S. 614, 620-21 (1998). Thus, there can be little dispute that *Johnson* applies retroactively to this case.

## IV.    The categorical and modified categorical approach

Before explaining why Paul Vernon is actually innocent of his § 924(c) conviction and sentence, it is necessary to briefly set out the governing analytical framework. That framework, summarized below, was refined most recently in *Descamps v. United States*, 133 S. Ct. 2275 (2013), which is "the law of the land" and "must be . . . followed." *United States v. Howard*, 73 F.3d 1334, 1344 n.2 (11th Cir. 2014).

As is the case in determining whether a predicate offense qualifies as a "violent felony" under the ACCA, in determining whether a predicate offense qualifies as a "crime of violence" for purposes of a conviction under 18 U.S.C. § 924(c), this Court must apply the "categorical approach." Under that approach, "courts may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor v. United States*, 495

U.S. 575, 600 (1990)). In adopting this approach, the Supreme Court emphasized both Sixth Amendment concerns (explained below) and the need to avert "'the practical difficulties and potential unfairness of a [daunting] factual approach.'" *Id.* at 2287 (quoting *Taylor*, 495 U.S. at 601). As a result, courts must "look no further than the statute and judgment of conviction." *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014) (citation omitted). And, in doing so, they "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2011) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

Because *Johnson* has voided the residual clause in 18 U.S.C. § 924(c)(3)(B) for the reasons detailed below, a predicate conviction will continue to qualify as a "crime of violence" after *Johnson* only if it satisfies the elements clause in § 924(c)(3)(A). The Eleventh Circuit has extended *Descamps'* methodology beyond the enumerated offenses provision at issue in that case, to the elements clause in both the ACCA and Sentencing Guidelines – which are worded identically to each other, and almost identically to §924(c)(3)(A). Looking no further than the statute and judgment of conviction, the Eleventh Circuit has held, a conviction will therefore qualify as a predicate within the elements clause "only if the statute on its face requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against a person for every charge brought under the statute." *Estrella*, 758 F.3d at 1244 (citation omitted). "Whether, in fact, the person suffering

under this particular conviction actually used, attempted to use, or threatened to use physical force against a person is quite irrelevant. Instead, the categorical approach focuses on whether *in every case* a conviction under the statute *necessarily* involves proof of the element." *Id.* (citations omitted; emphasis added).

To implement the categorical approach, the Supreme Court has "recognized a narrow range of cases in which sentencing courts" may look beyond the statute and judgment of conviction and employ what it is referred to as the "modified categorical approach." *Descamps*, 133 S. Ct. at 2283–84. Those cases arise where the statute of conviction contains alternative elements, some constituting a violent felony and some not. In that scenario, "the statute is 'divisible,'" in that it "comprises multiple, alternative versions of the crime." *Id.* at 2284. As a result, "a later sentencing court cannot tell, without reviewing something more [than the statute and judgment of conviction], if the defendant's conviction" qualifies as violent felony. *Id.*

Two key points must be made about the modified categorical approach. First, *Descamps* made clear that "the modified categorical approach can be applied only when dealing with a divisible statute." *Howard*, 742 F.3d at 1344. Thus, where the statute of conviction "does not concern any list of alternative elements" that must be found by a jury, there is no ambiguity requiring clarification, and therefore the "modified approach . . . has no role to play." *Descamps*, 133 S. Ct. at 2285–86; *see Estrella*, 758 F.3d at 1245–46; *Howard*, 742 F.3d at 1345–46. "[I]f the modified categorical approach is inapplicable," then the court must limit its review to the statute and judgment of conviction. *Howard*, 742 F.3d at 1345. And, even if a

statute is divisible, the court need not employ the modified categorical approach if none of the alternatives would qualify. *Id.* at 1346–47.

Second, even where the modified categorical approach does apply, it does not permit courts to consider the defendant's underlying conduct. Rather, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285. And, in order to ensure that the focus remains on the statutory elements rather than the defendant's underlying conduct, the court is restricted in what documents it may consider.

In *Shepard v. United States*, 544 U.S. 13, 15 (2005), the Supreme Court held that courts are "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." What these *Shepard* documents have in common is that they are "conclusive records made or used in adjudicating guilt." *Id.* at 21; *see id.* at 23 ("confin[ing]" the class of permissible documents "to records of the convicting court approaching the certainty of the record of conviction"). That accords with their function in the modified categorical approach— namely, to permit the court to identify the elements for which the defendant was convicted. *Descamps*, 133 S. Ct. at 2284.

Importantly, and as the Supreme Court explained in *Descamps*, that inexorable focus on the elements derives in large part from "the categorical approach's Sixth Amendment underpinnings." *Id.* at 2287–88. Other than the fact of a prior conviction, a jury must find beyond a reasonable doubt any fact that increases a defendant's sentence beyond the prescribed statutory maximum. *Id.* at 2288 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The reason for the "prior conviction" exception is that, during the earlier criminal proceeding, the defendant either had a jury or waived his constitutional right to one. *See Apprendi*, 530 U.S. at 488.

As the Supreme Court made clear in *Descamps*, the use of *Shepard* documents "merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits." 133 S. Ct. at 2288. This is so because "the only facts the court can be sure the jury . . . found [beyond a reasonable doubt] are those constituting elements of the offense;" and, similarly, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements." *Id.* But where a court relies on non-*Shepard* documents to increase a defendant's sentence, it "extend[s] judicial factfinding" "beyond merely identifying a prior conviction," violating the Sixth Amendment. *Id.*

In sum, in determining whether a conviction qualifies as a "crime of violence," a court must generally consider only the statute and judgment of conviction. Only if the statute is divisible may the court consider *Shepard* documents, and it may do so

only for the sole purpose of ascertaining the statutory elements for which the defendant was convicted. Once those elements are identified, the court must determine whether the least of the acts prohibited *necessarily* requires the use, attempted use, or threatened use of violent, physical force against another. In no case may a court rely on non-*Shepard* documents or analyze whether the defendant's underlying conduct constituted a "crime of violence."

**V.    In light of *Johnson*, Paul Vernon's Conviction Under 18 U.S.C. § 924(c) Cannot Be Sustained Because It Was Not Predicated on a "Crime of Violence" Under Either the Elements Clause or Residual Clause**

Paul Vernon  was convicted of a violation of 18 U.S.C. § 924(c) in Count 2.

At the time of conviction, § 924(c)(1) provided:

> Whoever, during and in relation to any crime of violence  . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .[be sentenced to imprisonment of not less than five years] [if the firearm is brandished, be sentenced to a term of imprisonment of not less than seven years] [if the firearm is discharged, be sentenced to a term of imprisonment of not less than ten years] . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty five years . . .

The term "crime of violence" as used therein was (and still is) defined in §924(c)(3) to mean an offense that is a felony and –

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

For the reasons detailed below, Paul Vernon's § 924(c) conviction for using or carrying a firearm in relation to/possessing a firearm in furtherance of a "crime of violence" is void because the "crime of violence" element cannot be satisfied here. The predicate offense of bank robbery does not qualify as a "crime of violence" as a matter of law because (A) the residual clause in §924(c)(3)(B) is unconstitutionally vague in light of *Johnson*, and (B) Paul Vernon's conviction for bank robbery is categorically overbroad vis-à-vis an offense within §924(c)(3)(A)'s elements. Therefore, the "crime of violence" element of § 924(c) cannot be sustained, and it is now clear that Paul Vernon's conviction and consecutive sentence were unconstitutional and must be vacated.   Paul Vernon is actually innocent of Count 2 at this time.

## A.   Section 924(c)'s Residual Clause is Unconstitutionally Vague in Light of *Johnson*

*Johnson* held the residual clause in the ACCA, 18 U.S.C. §  924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious risk of physical injury to another"), to be unconstitutionally vague because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by Judges."  135 S. Ct. at 2557.  In the Supreme Court's view, the process espoused by *James v. United States*, 550 U.S. 192 (2007), of determining what is embodied in the "ordinary case" of an offense, and then of quantifying the "risk" posed by that ordinary case, was constitutionally problematic:

"[t]he residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." *Id*. at 2558.  As a result, "[g]rave uncertainty" as to how to determine the risk posed by the "judicially imagined ordinary case" led the Court to conclude that the residual clause was void for vagueness. *Id*. at 2557.

The same "ordinary case" inquiry that in *Johnson* led the Supreme Court to conclude that the ACCA residual clause is unconstitutionally was previously applied to § 924(c)(3).  *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013).  That is, like the ACCA, the residual clause of § 924(c)(3)(B) requires courts to picture the "ordinary" case embodied by a felony, and then assess the risk posed by that "ordinary" case.  *See id*.

Notably, the definition of "crime of violence" in the residual clause in § 924(c) is identical to that in 18 U.S.C. § 16(b).  *Compare* § 924(c)(3)(B) (offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") *with* § 16(b) (offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used on the course of committing the offense").

The Eleventh Circuit has previously held that the same "ordinary risk" analysis applied in ACCA cases and § 924(c)(3) (the residual clause at issue in Paul Vernon's case), also applied in the § 16(b) context.  *See United States v. Keelan*, 786

14

F.3d 865, 871 n.7(11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) as "analogous" for analysis purposes).

This is consistent with the concession made during litigation of the *Johnson* case by the Government, through the Solicitor General, who agreed that the phrases at issue in *Johnson* and here pose the same problem.  Upon recognizing that the definitions of a "crime of violence" in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supp. Br. of Resp. United States at 22-23, *available at* 2015 WL 1284964 at *22-*23) (Mar. 30, 2015).

The Solicitor General was right: section 924(c)(3)(B) and § 924(e)(2)(B)(ii) the ACCA are essentially the same and contain the same flaws. This Court should hold the Government to that concession.

Indeed, courts regularly equate these three clauses—18 U.S.C. § 924(c)(3)(B), 18 U.S.C. § 16(b), and the ACCA residual clause—for purposes of analysis.  *See, e.g., Chambers v. United States*, 555 U.S. 122, 133, n.2 (2009) (citing both ACCA and § 16(b) cases and noting that § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are

15

crimes of violence under § 16(b)"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other).

Post-*Johnson*, three circuits have extended the reasoning in *Johnson* and concluded that the statutory language and ordinary risk analysis applicable to § 16(b) is sufficiently similar to that applicable to the ACCA's residual clause that it suffers from the same defects of being unconstitutionally vague. *See United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015) ("Section 16(b) is materially indistinguishable from the ACCA's residual clause" and "it too is unconstitutionally vague"). And that logically suggests that the same must also be true of § 924(c)(2)(B)—**with language identical to § 16(b), and to which the same "ordinary risk" analysis applies**.

Notably, in explicit recognition of the "similarity between § 924(c) and § 924(e)," the Eleventh Circuit – like several of its sister courts – has authorized the filing of a second or successive § 2255 motion asserting that *Johnson* renders § 924(c)(3)(B) unconstitutionally vague. *In re Pinder*, ___ F.3d ___, 2016 WL 3081954 (11th Cir. June 1, 2016) (citing cases)  And indeed, several district courts have already found that the § 924(c) residual clause is unconstitutionally vague after

16

*Johnson.   See United States v. Thongsouk Theng Lattaphom*, ___ F.Supp.3d ___, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016)*; United States v. Bell,* ___ F.Supp.3d ___, 2016 WL 344749 (N.D. Ca. Jan. 28, 2016) ("I agree with defendants that the section 924(c)(3) residual clause cannot stand under *Johnson II.*"); *United States v. Edmunson*, Case No. 13-cr-00015-PWG, D.E. 67 at 11 (D. Md. Dec. 29, 2015) (finding that the 924(c) residual clause is unconstitutionally vague in context where Bank robbery Conspiracy was the qualifying "crime of violence"); *United States v. Lattanaphom*, Case No. 2:99-00433, D.E. 1659, (E.D. Cal. Feb. 1, 2016) (dismissing Bank robbery Conspiracy counts charged as crimes of violence under the residual clause of 924(c) because that clause is unconstitutionally vague); *United States v. Bell*, ___ F. Supp. 3d ___, 2016 WL 344749, *13 (N.D. Cal. Jan. 28, 2016) (finding that the 924(c) residual clause is unconstitutionally vague and may not be used to establish that robbery of government property under 18 U.S.C. 2112 is a crime of violence).  This is because, in determining whether an offense falls under § 924(c)'s residual clause, a court would have to engage in the very analysis deemed constitutionally problematic by the Supreme Court in *Johnson*.

Section 924(c)(3)(B), like the materially indistinguishable residual clause in the ACCA, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is.  *Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213.  Because these are the identical analytical steps that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive

constitutional scrutiny under the due process principles reaffirmed in *Johnson*.  As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

**B.**   **Bank Robbery Categorically Fails to Qualify as a "Crime of Violence" Under the Elements Clause**

**I.   UNARMED BANK ROBBERY**

**Bank Robbery Categorically Fails to Qualify as a "Crime of Violence" Under the Elements  Clause**

**A. Pertinent Statute**

Federal bank robbery, 18 U.S.C. § 2113, in pertinent part, provides:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, management, or possession of, any bank, credit union, or any savings and loan association [shall be punished in accordance with the remainder of the statute]

**B. Federal Bank Robbery Under § 18 U.S.C. 2113(a) Fails to Constitute a "Crime of Violence" Because It Can Be Accomplished Merely by Intimidation, Which Does Not Require (A) An Intentional Threat of (B) Violent Physical Force**

Federal bank robbery, as defined by 18 U.S.C. § 2113(a) fails to qualify as a "crime of violence" be accomplished by "intimidation" or by "extortion" which do not require the use, attempted use, or threatened use of *"violent* force."  Additionally, because "intimidation" and "extortion" under the federal bank robbery statute can be accomplished without an *intentional* threat of physical force, it fails to satisfy the *intentional* mens rea required under the elements  clause.

### 1. Intimidation Does Not Equal the Use, Attempted Use, or Threatened Use of "Violent Force"

It is well settled that "intimidation" under the federal bank robbery statute only occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts." *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) (emphasis added); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same).  Applying this intimidation definition here, even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, it still fails to qualify as a "crime of violence" under the elements  clause because it does not require the use or threatened use of "violent force" against another.  The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d 165, 168-69 (4th Cir. 2012), is directly on point.  Indeed, in that case, the Fourth Circuit unequivocally held that the threat of <u>any physical injury</u>, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."

In *Torres-Miguel*, at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "*will result in death or great bodily injury to another*."  701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added).  The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the elements  clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c)(3)(A) elements  clause.  *Id*.  Despite the "death or great bodily injury"

element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the elements clause. *Id.* at 168-69. In a blanket manner, the Fourth Circuit held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id.* at 168. The Fourth Circuit, in strong words, proclaimed that "of course, a crime may <u>result</u> in death or serious injury without involving <u>use</u> of physical force." *Id.* (emphasis added).

The Fourth Circuit, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury – even death – can result without use of "violent force." *Id.* at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). In that case, at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the elements clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence .

20

. . because there is a difference between causation of an injury, which is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. *Id*. at 195-56.

For even further support, in *Torres-Miguel*, 701 F.3d at 169, the Fourth Circuit embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a deadly weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an

accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

Therefore, *Torres-Miguel* and all the other cases discussed above demonstrate that federal bank robbery, which can be accomplished by putting another in fear of bodily harm, does not require "violent force." If threat of serious bodily injury or death does not equal violent force, then certainly, threat of "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to poison that person, to release hazardous chemicals on that person, or to lock that person up in a room without food or water – some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."

Finally, the plain language of the federal bank robbery statute provides that it be committed not only by intimidation, but also by extortionate means, which merely requires the threat of economic harm. *See* § 2113(a) ("Whoever, by force and violence, or by intimidation takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion . . ."). " And it is well settled that extortion can be committed by putting the victim in "[f]ear of economic harm." *United States v. Vallejo*, 297 F.3d 1154, 1165 (11th Cir. 2002). No threat of any physical force is required. *Id.*; *see also United States v. Hairston*, 46 F.3d 361, 365 (4th Cir. 1995) ("[t]o prove extortion by fear of economic harm, the government must establish that the threat of such harm generated fear in the victim"); *United States v. Lisinski*, 728 F.2d 887, 892 (7th Cir. 1984) ("The wrongful use of fear is

satisfied if the extortioner exploits the victim's fear of economic loss, as did [the defendant] in this case"); *United States v. Cusamano*, 659 F.2d 714, 715 (6th Cir. 1981) ("it is well settled that fear of economic loss is sufficient to support a conviction" for extortion); Sand and Siffert, 3-50 Modern Federal Jury Instructions-Criminal § 50-12 (to sustain conviction for extortion, "[t]he use or threat of violence does not have to be directed at the person whose property is taken.  The use of threat of force or violence might be aimed at a third person, or at causing *economic rather than physical injury*.") (emphasis added).

Thus, bank robbery can be accomplished, for example, by a phone caller who threatens to malign the reputation of a bank or vandalize the bank if the banker does not deposit money into the caller's account.  *See United States v. Golay*, 560 F.2d 866, 869 n.2 (8th Cir. 1977) ("money deposited at the direction of a phone caller making extortionate type threats" satisfies federal bank robbery elements ) (citation omitted).  It goes without saying that such conduct does not require the use, attempted use, or threat of violent physical force, let alone any physical force against a person necessary to qualify as a "crime of violence" under the elements clause of § 924(c).

Because "the full range of conduct" covered by the bank robbery statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s elements clause.  *Torres-Miguel*, 701 F.3d at 171.  And it makes no difference that the possibility of violating the bank robbery statute without the use or threat of violent physical force may be slim.  Because the possibility exists, this

Court cannot legally find that bank robbery is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id.* at 171. The Court should find the same here with respect to the federal bank robbery statute, which leaves open the same possibility.

2. **Intimidation Does Not Require An Intentional Threat of Violent Physical Force Necessary Under § 924(c)'s Elements Clause**

Even more, "intimidation" as defined under the bank robbery statute does not constitute a "crime of violence" under the Elements Clause because it does not require an <u>intentional</u> threat of physical force. As the Eleventh Circuit explained in *Kelley*, "a defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating." 412 F.3d at 1244. *See also Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) (holding that an offense can only constitute a "crime of violence" under the elements clause if it has an element that requires an "intentional employment of physical force [or threat of physical force]."). *Accord United States v. Dixon*, __F.3d__, 2015 WL 7422615, at *4 (9th Cir. 2015) (holding California bank robbery does not constitute "crime of violence" under the ACCA elements clause because the offense does not require intentional use of force).

Significantly, the Eleventh Circuit—and all other Circuits have held the same—many of them relying on the Fourth Circuit's holding in *Garcia*. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1335-36 (11th Cir. 2010) (citing *Garcia* and *Bejarano-Urrutia*); *Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557, 560 (7th Cir. 2008); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (citing *Bejarano-Urrutia*); *United States v. Torres-Villalobos*, 487 F.3d 607, 615-16 (8th Cir. 2007) (citing *Bejarano-Urrutia*); *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) (citing *Garcia* and *Bejarano-Urrutia*); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1127-32 (9th Cir. 2006) (en banc) (citing *Bejarano-Urrutia*); *Oyebanji v. Gonzales*, 418 F.3d 260, 263-65 (3d Cir. 2005) (citing *Bejarano-Urrutia*); *Jobson v. Ashcroft,* 326 F.3d 367, 373 (2d Cir. 2003); *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001).

It is well settled that the "intimidation" element of federal bank robbery is missing this necessary intentional mens rea. "Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating." *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005). *See also Woodrup*, 86 F.3d at 36 ("Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation" as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts."); *United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that

defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).  In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury.  It is enough that the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear.  Due to the lack of this intent, unarmed federal bank robbery criminalizes conduct that does not require an intentional threat of physical force. Therefore, unarmed bank robbery squarely fails to qualify as a "crime of violence."

The Court should vacate Paul Vernon's sentence on Count 2, the 924(c) count, because the predicate Bank robbery offenses, as defined by 18 U.S.C. § 2113(b), do not qualify as a "crime of violence" as a matter of law.

For the reasons set forth above, bank robbery fails to qualify as a "crime of violence" under § 924(c)'s elements clause because it may be committed by putting one in fear of future injury to his person or property, which (1) does not require the threat of *violent physical force* against persons or property, and (2) does not require an *intentional* threat of the same.  Bank robbery fails to qualify as a "crime of violence" under § 924(c)'s Residual Clause, post-*Johnson*, because it suffers from the same constitutional infirmity of being void for vagueness.

26

Accordingly, Paul Vernon respectfully asks this Court to grant this § 2255 motion and re-sentence him without the § 924(c) count 2.

## II.   ARMED BANK ROBBERY

### A. Section 2113(d), Which Requires Nothing More Than Openly Carrying A Dangerous Weapon, Does Not Convert Federal Bank Robbery into a "Crime of Violence"

To prove the more serious offense of armed bank robbery under 18 U.S.C. § 2113(d), the government must establish that during the commission of the bank robbery, the defendant "either assaulted another person by the use of a dangerous weapon or device, or the defendant put another person's life in jeopardy by the use of a dangerous weapon or device."  *See* Modern Federal Jury Instructions, 53-14. "Use of a dangerous weapon" means "brandishing, displaying or even referring to the weapon."  *Id.*  The government may prove either that the defendant assaulted another person by the use of a dangerous weapon or device, or that he put another person's life in jeopardy by the use of a dangerous weapon or device; it need not prove both.  *Id.*  Neither of these means under § 2113(d) converts a bank robbery into a "crime of violence" under the elements  clause of § 924(c)(3)(A).  Specifically, assaulting another person by the use of a dangerous weapon does not require the threat or use of violent physical force.  And putting another person's life in jeopardy by the use of a dangerous weapon or device does not require an 1) the intentional threat 2) of violent physical force.

27

1. **Assaulting Another Person By the Use of a Dangerous Weapon or Device Does Not Require the Threat or Use of Violent Physical Force**

To begin with, *Torres-Miguel* dictates that the act of assaulting another person by the use of a dangerous weapon or device does not require the use or threat of violent physical force.  Such act can be accomplished by "inflict[ing] or attempt[ing] to threaten to inflict <u>physical harm</u> on [a] person by the immediate use of a dangerous weapon."   Modern Federal Jury Instructions, 53-14 (emphasis added).  "Dangerous weapon," in turn, is broadly defined as "<u>anything</u> capable of inflicting <u>serious bodily harm or injury</u> upon another person."  *Id.* (emphasis added).  However, in *Torres- Miguel*, the Fourth Circuit squarely held that threatening or actually inflicting physical injury, serious physical injury, or even death can be accomplished by actions without the use or threat of violent physical force; therefore, the "physical harm" and  "serious bodily harm or injury" requirements of § 2113(d) likewise can be satisfied without the use or threat of violent physical force.

To be sure, under the above-referenced terms of assault with a dangerous weapon, it is plain that one can be convicted of armed bank robbery under § 2113(d) by threatening to poison or expose the teller to a hazardous gas – exactly the type of conduct that *Torres-Miguel* held does not equal violent physical force.  *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).  Further, the Tenth Circuit's decision in *Perez-Vargas*, 414 F.3d at 1285-86, is directly on point.  As earlier referenced, in *Perez-Vargas*, the Tenth

Circuit held that a Colorado assault statute which criminalized knowingly "caus[ing] bodily injury to another person by the means of a deadly weapon" did not qualify as a "crime of violence" under the elements clause. *Id.* The Tenth Circuit explained that because the offense could be accomplished by actions such as "intentionally exposing someone to hazardous chemicals," it did not require physical force. *Id.* at 1286. For this same reason, armed bank robbery under § 2113(d) is also not a "crime of violence" under the elements clause.

2. **Putting Another Person's Life in Jeopardy By the Use of a Dangerous Weapon Does Not Require (1) An Intentional Threat of (2) Violent Physical Force**

The final reason why armed bank robbery under § 2113(d) fails to qualify as a "crime of violence" is because putting another person's life in jeopardy can be accomplished without 1) an intentional threat 2) of violent physical force. "To put another's life in jeopardy is to expose that person to a risk of death by the use of a dangerous weapon or device." *See* Modern Federal Jury Instructions, 53-14. In other words, this means the "defendant placed someone in a state of danger" by "display[ing] or bradish[ing] what appears to a be a dangerous weapon during the robbery." *Id.*

a. **No Threat of Violent Physical Force Required**

Under the above-described terms of § 2113(d), a defendant can put another in danger through the use or threatened use of poison or hazardous chemicals – the exact conduct that the Fourth Circuit in *Torres-Miguel*, 701 F.3d at 168, and the Tenth Circuit in *Perez-Vargas*, 414 F.3d at 1286, concluded does not constitute

violent physical force.   Moreover, that this conduct could threaten someone's life does not change the result.   Indeed, in *Torres-Miguel*, the California statute at issue criminalized a threat of death, yet, the Fourth Circuit found that because actual death or threat of death could be accomplished absent violent physical force, the California statute failed to qualify as a "crime of violence" under the elements clause.   701 F.3d at 168 ("Of course, a crime may result in death or serious injury, without involving use of physical force.").   This Court should find the same here.

### b. **No Intentional Threat Required**

Even more, a defendant can place someone's life in jeopardy under § 2113(d) without any <u>intent</u> to threaten or use violent physical force.   Indeed, a defendant can violate this provision merely by carrying a gun during the bank robbery because "he feels secure with it," even though he has no intent to intimidate another. *United States v. Martinez-Jimenez*, 864 F.2d 664, 667 (9th Cir. 1989)   No nexus is required between the weapon and the intimidation required under § 2113(a).   He "need not brandish" the weapon "in a threatening manner" or "make assaultive use of the device."   *Id.*; *see also United States v. Bennett,* 675 F.2d 596, 599 (4th Cir. 1982) ("A weapon openly exhibited by a robber during a robbery" without more is sufficient to constitute a violation under § 2113(d)).   Therefore, armed robbery under § 2113(d) fails to satisfy the intentional mens rea requirement of *Garcia*, 455 F.3d at 468.   For this reason and all the other reasons discussed above, a federal bank robbery under §§ 2113(a) and (d) fails to qualify as a "crime of violence" under the § 924(c) elements clause.

If Paul Vernon's § 924(c) conviction on Count 2 is vacated, the Court must also: (1) vacate the 84 - month consecutive sentence imposed on Count 2, as that sentence was mandated by the § 924(c) conviction, *see* 18 U.S.C. § 924(c)(1)(A), and (2) modify the term of supervised release, given that as to the remaining counts, Counts 1, 3, 4, 6, the Court may only impose a term of supervised release of up to three years. *See* 18 U.S.C. § 3583(a), (b)(2).

## <u>CONCLUSION</u>

For the reasons set forth above, the residual clause in 18 U.S.C. § 924(c)(3)(B) is void for vagueness in light of *Johnson*, and a bank robbery in violation of 18 U.S.C. § 2113(a) and (d) does not qualify as a "crime of violence" under § 924(c)(3)(A). Paul Vernon therefore respectfully requests that the Court grant this § 2255 motion, vacate his conviction pursuant to 18 U.S.C. § 924(c) and resultant 84 - month consecutive sentence, and modify his term of supervised release to a term of less than three years.

And because Paul Vernon has served in excess of what the statutory maximum would be without the § 924(c) counts and is currently serving an illegal sentence, he respectfully requests that the Court expedite this matter, order his immediate release from custody, or at minimum, grant him an immediate, unsecured bond.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:      /s/Daniel Ecarius
         Assistant Federal Public Defender
         Florida Bar No. 719765
         150 West Flagler Street
         Miami, FL 33131
         Tel: (305) 530-7000
         Fax: (306) 536-4559
         Daniel_Ecarius@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 24, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/Daniel Ecarius_